Bertram Harnett, J.
The village wants to be exempted from a State prohibition against open burning of leaves, tree trimmings and lawn and garden debris. The State refuses.
Pursuant to section 1271 (subd. 1, par. [a]) of the Public Health Law and sections 77 and 78 of the Environmental Conservation Law, the Department of Environmental Conservation (Department) is empowered to enact: “ rules and regulations for preventing, controlling or prohibiting air pollution in such areas of the state as may be affected by air pollution ’ ’, provided (1) that the regulations are consistent with the State policy enunciated in section 1265 of the Public Health Law and (2) that the regulations conform to the provisions of section 1276 of the Public Health Law. The regulation may also include provisions establishing the degree of air pollution which may be permitted in various areas of the State and the extent to which air contaminants may be emitted by any source. (Public Health Law, § 1271, subd. 1, par. [a].)
The policy of the State is to maintain a ‘ ‘ reasonable degree of purity of the air resources of the state ”. (Public Health Law, § 1265.) Section 1276 of the Public Health Law, with which the air pollution regulations may not be inconsistent, requires the regulations to give: ‘ ‘ due recognition to the fact that the quan *182 tity or characteristics of air contaminants or the duration of their presence in the atmosphere which may cause air pollution in one area of the state, may cause less air pollution * * * in another area of the state ’ ’ and to be based upon: ‘ ‘ consideration [of] such factors, among others found * * * to be proper and just, as existing physical conditions, zoning classifications, topography and prevailing wind directions and velocities (Public Health Law, § 1276, subd. 4.)
Under those provisions, the regulations set forth in Part 190 of the New York State Air Pollution Control Rules were adopted (10 NYCRR Part 190), including section 190.2, prohibiting the open burning: “ for on-site disposal, of rubbish generated by residential activities in any city or village; or in any town with a total town population, including incorporated or unincorporated areas of greater than 20,000 ” (10 NYCRR 190.2 [d]). Leaves, tree trimmings and lawn and garden debris are included in the term “rubbish”. (10 NYCRR 190.1 [f].) However, the absolute prohibition of section 190.2 is modified by section 190.3, which provides procedures whereby the Department may permit open on-site burning. (10 NYCRR 190.3 [c].)
The village duly applied for an exemption from the open-burning prohibition. Such exemptions may be granted by promulgation of a new regulation designating the village as on open-burning area. (10 NYCRR 190.3 [c] [2].) After a hearing, the Department denied the application and the village instituted this proceeding.
The promulgation of rules by a governmental agency is an administrative or legislative act, and can be judicially attacked only on the ground that it is arbitrary and capricious. [Matter of County of Cayuga v. McHugh, 4 N Y 2d 609; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 7803.07, 7804.09.) Accordingly, so much of the petition as charges that the matter must be transferred to the Appellate Division under CPLR 7804 (subd. [g]) is dismissed as a matter of law. The dispute relates to rule making and ‘ ‘ substantial evidence ’ ’ is not a factor.
Whether the Department’s determination was arbitrary and capricious depends upon whether: “ the record discloses circumstances which leave no possible scope for the reasonable exercise of * * * discretion * * # [citing cases] ”. (Matter of Stracquadanio v. Department of Health, 285 N. Y. 93, 96). The burden of supplying that proof is upon the petitioner. (Matter of Gambino v. State Liq. Auth., 4 A D 2d 37, affd. 4 N Y 2d 997.)
In addition to the statement of the attorney for the village at the hearing held by the Department, the record of the hearing *183 indicates that several witnesses appeared in opposition to the village’s application. Mr. William Baker, representing the National Air Pollution Control Administration (NAPCA), testified that NAPCA opposes open burning of leaves on the ground that it is inconsistent with the spirit of the Federal Air Quality Act. Mr. Baker admitted that open burning of landscape refuse contributes little to the atmospheric problems in comparison to the total problem in Nassau County, but contended that the totality of such small contributions comprised the bulk of the over-all problem, Gordon Stone, representing the Bureau of Solid Wastes Management of the United States Department of Health, Education and Welfare, testified that the alternatives to open burning are sanitary landfill, incineration and composting.
Dr. Allen Mytelka, Assistant Chief Engineer of the Interstate Sanitation Commission, testified that the effects of open burning of leaves customarily were felt many miles from the location of the fires, and indicated that air pollution problems are most severe in the fall, when the leaf disposal problem is also at its height. David Mafrici, from the Nassau County Health Department, testified that a solid waste management study being prepared for the county would support the three disposal methods suggested by Mr. Stone and that open burning of leaves is not an acceptable disposal method.
Other significant testimony was received from Mr. Robert Cusumano, Director of the Nassau County Air Pollution Control Bureau, who noted that the Nassau County Administrative Code presently prohibits all open burning. He further stated that a prohibition on open burning is an essential basic step in reducing air pollution, that the undesirable effects of such burning are detrimental to the health of the people in a wide geographic area, and that the burning causes an increase in an already intolerable air pollution situation. He estimated that the cost of a leaf pick-up program would amount to $1.60 per year per resident of a village handling 3,750 tons of leaves per year. As applied to the Village of Old Westbury, that cost would be less than $10,000 per year.
In response, the village noted that while it is only 7.5 square miles in area, containing some 2,600 people in 640 homes, the actual cost to the village of a leaf pick-up program covering 10% of the village last year was $9,600. The village claimed that the disparity between the county estimate and the actual cost resulted from the vast numbers of trees in the village, a heavily wooded community, in comparison with the average Nassau community. Although the cost of a complete pick-up program would *184 represent an increase of 15% in the total village budget, the attorney for the village admitted that the additional expense would not be considered a hardship. He rejected the alternative disposal methods of composting and sanitary landfill as not feasible under present or anticipated conditions in Nassau County, and claimed that adequate incineration facilities in the Old West-bury area were at least two years in the future.
The hearing officer concluded that the record contained 1 ‘ aesthetic and practical justification for allowing open burning in the Village ” under certain conditions. However, he noted that the present air pollution levels in northern Nassau County are already in excess of the ambient air quality standards and that open burning should be prohibited in all locations.
The hearing officer did note the anomaly of permitting a town of fewer than 20,000 residents to engage in open burning regardless of existing air quality, while prohibiting the same conduct by a village of fewer than 3,000 residents. However, there is no showing on this record that the distinction drawn by the rules is unreasonable, especially when towns of fewer than 20,000 people are usually located in rural areas. Each of the three towns in Nassau County exceeds 234,000 in population, and the air pollution problems of such congested areas have become apparent to all.
Overriding the entire picture are, of course, the consistent positions of the Federal, State and county governments that open burning of leaves is anathema, albeit those governments do not have the legal responsibility to dispose of the leaves which are not being burned. However, the great majority of Nassau County’s 64 villages and two cities apparently comply with the applicable rules. While many of those may not have the problem to the extent that Old Westbury does, neither do many of them have the admitted financial resources of that village. Notwithstanding the plight of small wooded communities, literally inundated with leaves, the State has clearly expressed its policy that the air supply must be cleansed of contaminants for the benefit of the entire population. The Department regulations seek to encourage that end and do not appear to be unreasonable, at least to the extent here involved.
The court is not persuaded by the argument that Nassau County’s air is already befouled and that a small additional amount will not cause any further damage. The same logic, if adopted by everyone, would result in total dismemberment of all applicable regulations, since all the sources of air pollution appear to be independently small. As the Court of Appeals noted *185 in sustaining New York City’s air pollution law: “ the ponderous argument made that pollution caused by [individual refuse disposal units] is of trivial effect in the over-all solution of a massive problem is fallacious * * * government is and must be entitled to attack massive problems piecemeal (Oriental Blvd. Co. v. Heller, 27 N Y 2d 212, 218-219.)
The State is not necessarily bound by comments of a hearing officer. Based upon a consideration of the entire record before the Department, the court cannot find that the determination here attacked by the village was beyond the scope of reasonableness or beyond the pale of the standards imposed upon the Department by the Legislature. Accordingly, the petition must be dismissed and judgment entered in favor of respondents, without costs and disbursements.